## SIDNEY PEARCE v. LOUIS PETERSON.[1]

March 23, 1928.

No. 26,621.

**Finding that defendant acquired title by adverse possession not required by the evidence.**

The evidence did not require a finding that the defendant acquired title to a portion of plaintiff's adjoining lot by adverse possession through his occupancy beyond the true boundary.

Adverse Possession, 2 C. J. p. 276 n. 59.

Defendant appealed from an order of the district court for Hennepin county, Nordbye, J. denying his motion for a new trial. Affirmed.

*Lundeen & Lundeen,* for appellant.

*Tifft & Youngdahl,* for respondent.

DIBELL, J.

Action to determine adverse claims to a lot in Minneapolis. There were findings for the plaintiff, and the defendant appeals from the order denying his motion for a new trial.

The plaintiff owns lot 7 in Holst's addition to Minneapolis. The lot faces Sixteenth avenue south at the west. The defendant owns the lot adjoining on the south. The true line between the lots passed through a barn built more than 40 years ago and before the land was platted. The west end of the barn was about 38 feet from Sixteenth avenue. The barn was 59 feet in width. From its east end to the alley was about 24 feet. This strip of land off the south of lot 7, about 5 feet wide at the west and 6 feet wide at the east, is the land in dispute. The defendant claims title to it by adverse possession. The court found that the plaintiff was the owner of the whole of the lot.

As far back as 1909 or 1910 the defendant's occupancy of the barn commenced. The court's view was that possession did not

[1]Reported in 218 N. W. 549.

commence until 1910. The defendant claimed that it commenced in 1909. This action was commenced in July, 1926. The question is whether for 15 years after defendant's entry his occupancy was such as to make title by adverse possession. The possession of his predecessor in title was not hostile to the owner of lot 7. There is no prior possession which he can tack to his own.

The defendant used the basement of the barn for the manufacture of cement blocks. The upper part he used for stabling his horses. The evidence is not such as to require a finding that the portion of the land to the east of the barn or that to the west was continuously occupied by the defendant. The testimony is in dispute as to the character and continuity of his possession.

In the early part of 1924 the defendant tore down the barn and about that time commenced the erection of a duplex on his lot. He had excavated sand from his lot for use in his manufacture of cement blocks. This excavation left lot 7 above his lot. In the early part of 1925, apparently in connection with the building of the duplex and the improvement of his lot, he erected a retaining wall on the true boundary line. This wall was on lot 14 and extended from the southwest corner of lot 7 east 53 feet, of which 15 feet were in the old basement.

The time when the defendant entered and when his occupancy ceased and other evidentiary facts as to the character of the possession, as well as the ultimate fact whether his possession was adverse, were for the trial court. That he built the retaining wall to protect lot 7, and at a time as might be found when his possession had not ripened into title, was a fact of some force in proof that he was not claiming beyond the true line. There had been for several years some claim by the defendant of ownership of the disputed strip and particularly of the part covered by the barn; and there were talks of the plaintiff's predecessor in title buying from defendant a quitclaim deed of lot 7. This may have been before title could have been acquired by possession, or it may have been made by way of a settlement at a time when the defendant claimed he had title, or it may have been later. The defendant claims that he was promised pay when his barn should be taken down and that it

was refused him after he had removed it. All these facts were for consideration. Of course if the defendant had acquired title by adverse possession he would not lose it by quitting possession. But the facts presented do not necessarily make such a situation.

The elements essential to the acquisition of title by adverse possession have been so often discussed that there is no need of a present restatement of them. 1 Dunnell, Minn. Dig. (2 ed.) § 113. The trial court in finding title in the plaintiff necessarily found that there was not adverse possession by the defendant. We sustain its finding. A different finding, we take it, would be sustained.

Order affirmed.